# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Michael K. Jones,                          Case No. 18-cv-2968 (WMW/ECW)

       Plaintiff,

   v.                                      **REPORT AND RECOMMENDATION**

Daniel Raden, Tom Roy, Paul Schnell, Joe
Hagerty, and Sean Deringer,[1]

       Defendants.

     This matter is before the Court on Defendants Daniel Raden, Tom Roy, and Paul

Schnell's (collectively, the "State Defendants") Motion to Dismiss (Dkt. No. 18)

("Motion"). The case has been referred to the undersigned United States Magistrate

Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons stated below, the Court recommends the Motion be granted. The Court

also recommends that Plaintiff Michael K. Jones' ("Jones") claims against Joe Hagerty in

his individual capacity and against Sean Deringer in his official capacity be dismissed

without prejudice.

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d), for Jones' official capacity claims against Tom Roy ("Roy") as Commissioner of Corrections and Joe Hagerty ("Hagerty") as the Wright County Sheriff, Paul Schnell is automatically substituted in place of Roy and Sean Deringer is automatically substituted in place of Hagerty. Since Jones alleged "personal capacity" claims against Roy and Hagerty (Dkt. No. 5 at 16), which the Court construes as individual capacity claims, Roy and Hagerty remain in the caption in their individual capacities.

# I.    BACKGROUND

On October 19, 2018, Jones, at the time an inmate housed at the Wright County Jail, filed his Complaint pursuant to 42 U.S.C. § 1983 against Roy, then-Minnesota Commissioner of Corrections; Hagerty, then-Sheriff of Wright County; and Daniel Raden ("Raden"), the Department of Corrections ("DOC") liaison to Wright County Jail.  (Dkt. No. 1; *see* Dkt. No. 5 at 14.)  Jones filed an Amended Complaint naming the same Defendants on November 13, 2018 and specifying that he was suing them in their official and individual capacities.  (Dkt. No. 5.)

The Complaint and Amended Complaint[2] allege that Jones "[w]asn't given the proper Health Care, and [has] been denied the process of receiving the proper reentry transition that's afforded by the [DOC]," and was not given "government identification in order to be a productive citizen."  (Dkt. No. 1 at 5.)  Regarding health care, Jones alleged that he "[w]as denied access concerning dental care, eye care, chemical dependency, and psychological services."  (*Id.*)  Jones alleged he "[w]as harmed by not getting corrective dental work on a broken tooth," that his "[e]ye sight [was] going bad from the strain," that his chemical dependency was not addressed "which leads to relapse," and that his "mental health that has hampered [him] continually."  (*Id.*)  Regarding his reentry transition, Jones alleged that "No ID means no job, which could set [him] up for failure in

---

[2]    The Complaint includes some allegations that were not incorporated in the Amended Complaint.  (*Compare* Dkt. No. 1, *with* Dkt. No. 5.)  Given that "pro se pleadings should be liberally construed," *Scherping v. C.I.R.*, 747 F.2d 478, 480 (8th Cir. 1984), the Court considers allegations in both the Complaint and Amended Complaint for purposes of this Motion.

the community." (*Id.*)  Jones also alleged a negligence claim against the Defendants

regarding his medical care.  (*Id.* at 6.)

Jones attached to his Amended Complaint a letter dated June 20, 2018 from his

appellate public defender, Erik Withall, to Raden.  (Dkt. No. 5 at 4.)  In his letter, Withall

requested that Jones be transferred to a state correctional facility and enclosed a June 13,

2018 letter that he received from Jones in which Jones identified a number of "problems"

he was having at Wright County Jail:

- "Eye doctor to received [sic] glasses.  Haven't had any from the [illegible]."

- "My broken hand hasn[']t been looked at."

- "My D.L. and birth certificate they say I have to wait until I get out.  I need them when I get out."

- "I can[']t get a rule 25 here because I have insurance."

(Dkt. No. 5 at 5, 6.)  Jones' June 13, 2018 letter also references a dentist, and while the

rest of that paragraph is illegible, it seems to state that there is "no infection."  (*Id.*)

Withall's letter to Raden stated that Jones told him that "his mental health and

medical needs are not being met at the Wright County Jail."  (*Id.* at 4.)  Withall further

stated that Jones "is in need of case management, which prisons provide, to help him with

preparation for his release at the end of his sentence.  Specifically, he identified the need

to obtain a birth certificate and government ID prior to his release so he can obtain

employment and receive medical care, which is not possible without proper

documentation."  (*Id.*)  Withall noted that Jones' sentence was set to expire on December

28, 2018.  (*Id.*)  Withall's letter concluded by asking Raden, "Please consider these

factors and the enclosed letter from Mr. Jones in support of his request to be transferred to an appropriate state correctional facility, rather than a contract bed at a county jail." (*Id.*)

Jones also attached to the Amended Complaint four offender kite or grievance forms and a radiologist's report relating to his fractured hand.[3]  (Dkt. No. 5 at 7, 9, 10, 11, 12.)  The first is a complaint to "DOC" stating that Jones needs glasses because he "can't see and [his] eyes are hurting from the strain" and that the Wright County Jail told him to contact DOC.  (*Id.* at 7.)  A sergeant at Wright County Jail emailed this kite, which appears to have an August 2018 date, to the DOC.  (*Id.*)  "M Herbert" at the DOC responded on October 4, 2018: "Unfortunately there is no way for us to get you glasses. If you have a pair outside the DOC and nobody can drop them off, then maybe they can be mailed to you.  Even if you were in a DOC facility at this point we would not be able to get glasses for you at this point."  (*Id.*)  The second kite, dated June 11, 2018, was addressed to the Wright County Jail.  (*Id.* at 9.)  While Jones' grievance is mostly illegible, it appears to relate to a lost or misplaced brace for Jones' hand.  (*Id.*)  The issue was resolved, as the kite states on June 12, 2018 that medical had ordered a new brace for Jones and a subsequent radiologist's report attached to the Amended Complaint indicates the bone fracture was healing.  (*Id.* at 9-10.)  The third kite, dated August 6, 2018, was addressed to the Wright County Jail and requested transition resources (such as a

---

[3]     Because these documents were attached as exhibits to Jones' Amended Complaint and no party has questioned their authenticity, the Court considers them on this Motion. *See Zean*, 858 F.3d at 526.

4

Minnesota ID, birth certificate, and Social Security card).  (*Id.* at 11.)  Wright County Jail

told Jones to fill out a request form to the DOC, which the jail would fax to the DOC.

(*Id.*)  The fourth kite, dated August 25, 2018, is a general grievance to the DOC regarding

psychological assistance, eye wear, and identification.  (*Id.* at 12.)  The form does not

have a response from the DOC.  (*Id.*)

On December 20, 2018, Jones sent a letter to the Court stating that he would be

released from Wright County Jail on December 28, 2018 and he intended to notify the

Court of his new address but did not know yet where he would be.  (Dkt. No. 12.)  On

December 26, 2018, the Court sent Jones a letter referral to the Federal Bar Association

*Pro Se* Project.  (Dkt. No. 13.)  That letter was returned by Wright County Jail because

Jones was "NOT HERE" and received by the Clerk's Office on January 7, 2019.  (Dkt.

No. 14.)  The Clerk's Office noted that it did not have a forwarding address for Jones,

and that he could not be found on the Bureau of Prisons inmate or the Minnesota

Offender locator websites.  (*Id.* (text entry).)

On January 11, 2019, the Amended Summons was returned unexecuted as to

Hagerty.  (Dkt. No. 16.)  The U.S. Marshals Service form remarked that the Wright

County Auditor had stated that Hagerty was no longer the Sheriff, and a deputy stated

that Hagerty no longer works in the Sheriff's Office and the Sheriff's Office had no

forwarding information.[4]  (*Id.* at 1.)  Presumably, Jones never received the unexecuted

Amended Summons because the Clerk's Office did not have an address for Jones by that

---

[4]      As stated in footnote 1, *supra*, Sean Deringer is now the Wright County Sheriff
and was automatically substituted for Hagerty as to official capacity claims.

time.  Hagerty has not been served as of the date of this Report and Recommendation.
(*See generally* Dkt.)

The State Defendants filed the present Motion to Dismiss on January 28, 2019.
(Dkt. No. 18.)  The Court issued a briefing order on February 4, 2019, setting Jones'
opposition due February 25, 2019.  (Dkt. No. 24.)  The briefing order was returned to the
Clerk's Office as undeliverable on February 15, 2019.  (Dkt. No. 26.)  The State
Defendants also filed a letter with the Court indicating they did not know of any new
address for Jones.  (Dkt. No. 25.)  No opposition has been filed to the Motion, nor has
Jones updated his address.  (*See generally* Dkt.)

## II.    LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),
the pleadings are construed in the light most favorable to the non-moving party, and the
facts alleged in the complaints must be taken as true.  *See Ashley County, Ark. v. Pfizer,
Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all
reasonable inferences from those allegations.  *See Blankenship v. USA Truck, Inc.*, 601
F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under
Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil
Procedure 8 and meet the principles articulated by the United States Supreme Court in
*Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading
standard articulated by Rule 8 "does not require detailed factual allegations, but it [does

demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations
omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of
the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007)).  Thus, to "survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting
*Twombly*, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court
complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a
sheer possibility that a defendant has acted unlawfully."  *Ritchie v. St. Louis Jewish Light*,
630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).
"Determining whether a complaint states a plausible claim for relief will . . . be a context-
specific task that requires the reviewing court to draw on its judicial experience and
common sense."  *Iqbal*, 556 U.S. at 679 (citation omitted).

> Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:
>
> While a plaintiff need not set forth detailed factual allegations or specific
> facts that describe the evidence to be presented, the complaint must include
> sufficient factual allegations to provide the grounds on which the claim rests.
> A district court, therefore, is not required to divine the litigant's intent and
> create claims that are not clearly raised, and it need not conjure up unpled
> allegations to save a complaint.

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (cleaned up). *Pro se*
complaints are construed liberally, but they still must allege sufficient facts to support the
claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations
omitted).

If matters outside the pleadings "are presented to and not excluded by the court,
the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P.
12(d). While matters "outside the pleadings" may not be considered in deciding a Rule
12 motion to dismiss, documents "necessarily embraced by the complaint are not matters
outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017)
(quoting *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir.
2004)). Thus, while courts primarily consider the allegations in the complaint in
determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters
incorporated by reference or integral to the claim, items subject to judicial notice, matters
of public record, orders, items appearing in the record of the case, and exhibits attached
to the complaint whose authenticity is unquestioned, without converting the motion into
one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688
F.3d 928, 931 n.3 (8th Cir. 2012).

## III.    DISCUSSION

### A.    The Court Recommends the State Defendants' Motion to Dismiss Be Granted

In their Motion, the State Defendants argue that Jones has failed to state a claim
upon which relief may be granted in their individual and official capacities (Dkt. No. 20
at 5-12) and that the state law claims should be dismissed for failure to state a claim or

due to lack of subject matter jurisdiction (*id.* at 12-13). As an initial matter, Jones'

failure to respond to the State Defendants' Motion is a sufficient basis to grant that

Motion. *See Mark v. Ault*, 498 F.3d 775, 786 (8th Cir. 2007) (alteration in original)

(holding that a party's "failure to raise or discuss an issue in his brief [would] be deemed

an abandonment of that issue") (quoting *Hacker v. Barnhart*, 459 F.3d 934, 937 n.2 (8th

Cir. 2006)); *Christensen v. PennyMac Loan Servs., Inc.*, 988 F. Supp. 2d 1036, 1042 (D.

Minn. 2013) ("Plaintiff's failure to respond amounts to a waiver, and on that basis alone,

Defendants' motion to dismiss should be granted.") (citations omitted). Nevertheless, for

completeness, the Court addresses the substance of the Motion below.

### 1. Any Claims for Prospective Equitable or Injunctive Relief Are Moot

To the extent Jones is seeking prospective equitable or injunctive relief, the Court

recommends dismissal of such claims as moot.[5] "Claims for equitable and injunctive

relief are moot when the plaintiff is no longer subject to the conditions of confinement of

which he complains." *Roblero-Barrios v. Ludeman*, No. 07-cv-4101 (MJD/FLN), 2008

WL 4838726, at *10 (D. Minn. Nov. 5, 2008) (citing *Senty-Haugen v. Goodno*, No. 04-

cv-1077 (ADM/JJG), 2005 WL 2917464, at * 3 (D. Minn. Nov. 4, 2005)). Here, Jones

was released from the Wright County Jail on or about December 28, 2018. (Dkt. No. 5 at

4; *see also* Dkt. Nos. 14, 26.) Jones' claims for prospective equitable or injunctive relief

---

[5]    In his original Complaint, Jones sought "a remedy to the issues through the DOC renting out DOC inmates to the county" as well as monetary compensation (Dkt. No. 1 at 4), but in his Amended Complaint, he sought "to be compensated because I[']ve addressed this issue in May, and I[']m being released homeless, with no ID to get housing, employment, and the proper medical insurance" (Dkt. No. 5 at 15).

became moot when he was released from custody. Accordingly, the Court recommends that Jones' claims be dismissed without prejudice to the extent they seek equitable or injunctive relief.

### 2. The Official Capacity Claims Are Barred by the Eleventh Amendment

The Court recommends that Jones' official capacity claims against the State Defendants be dismissed as the claims for damages are precluded by the Eleventh Amendment. The Eleventh Amendment states that the Court's jurisdiction does not "extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. The Eleventh Amendment also "bars suits against a State by citizens of that same State as well." *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citation omitted). The Supreme Court has held that official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690, n.55 1978)). In other words, a suit against a state official in his or her official capacity "is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). "The Eleventh Amendment bars such suits unless the State has waived its immunity." *Id.* at 66. The State of Minnesota has not waived its sovereign immunity. *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 800 (8th Cir. 2002). Thus, Jones' claims against the State Defendants in their official capacity for money damages are barred by the Eleventh Amendment.

### 3.    Jones Has Failed to State a "Deliberate Indifference to Medical Needs" Eighth Amendment Claim

Jones alleges that the State Defendants were deliberately indifferent to his serious medical needs because they denied him medical care, dental care, eye care, chemical dependency treatment, and psychological services.  (Dkt. No. 1 at 5.)  The Eighth Circuit has described a deliberate indifference to medical needs claim as follows:

> An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component.  The plaintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.  Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious.  The failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge.  As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.  Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs.  Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.

*Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (cleaned up) (affirming grant of motion to dismiss).  In other words, to sustain an Eighth Amendment claim, a prisoner must show "that the defendants were deliberately indifferent to his health or safety, and that they acted maliciously for the purpose of causing him harm."  *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (citations omitted).  To survive a Rule 12(b)(6) motion to dismiss a deliberate indifference claim, Jones must allege facts that show: "(1) he

suffered from objectively serious medical needs, and (2) the defendants actually knew of, but deliberately disregarded, those needs." *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (citation omitted). "To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014).

The Court first considers Jones' deliberate indifference claim against Raden in his individual capacity. Jones alleges "Daniel Raden is responsible for not addressing my claims in my letter to my lawyer (June 13th), which my lawyer forwarded to Mr. Raden." (Dkt. No. 5 at 16.) With respect to the alleged denial of eye care, the June 13, 2018 letter stated as one of several "problems": "Eye doctor to received [sic] glasses. Haven[']t had any from the [illegible]."[6] (Dkt. No. 5 at 6.) Courts have found a serious medical need to wear eyeglasses in cases where the plaintiff's uncorrected eyesight fell within the parameters of legal blindness, *Benter v. Peck*, 825 F. Supp. 1411, 1416-17 (S.D. Iowa 1993), or where the plaintiff alleged that his specially prescribed, tinted eye-glasses, fitted with a prism, were necessary to ameliorate double vision and a loss of depth perception resulting from a head injury, and that the confiscation of those glasses resulted

---

[6]    Although Jones attached to the Amended Complaint two grievances to the DOC relating to his request for eyeglasses, nothing suggests that Raden saw those grievances. They were addressed generally to the "DOC" (not Raden) and a sergeant at Wright County Jail and "M Herbert" at the DOC responded to the August 2018 grievance. (Dkt. No. 5 at 7, 8.) The August 2018 grievance noted that Jones had previously contacted "[o]ther staff," namely, the "Jail" and "Dan Raden" regarding glasses. (Dkt. No. 5 at 7-8, 12.) Jones' claim against Raden is based on the fact that Raden did not address the problems listed in Jones' June 13, 2018 letter to Withall that Withall later sent to Raden. (*See* Dkt. No. 5 at 16 ¶ A.)

in a permanent loss of vision, headaches, and injuries from falling or walking into objects, *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996). Here, however, Jones has not alleged that he was legally blind without his eyeglasses, nor did he allege permanent damage to his eyes, such serious impairment of his vision that it caused him to suffer injuries because he did not have eyeglasses, or that his daily activities or ability to read and write were impaired. Thus, Jones has not alleged facts that would satisfy the objective component of an Eighth Amendment claim.[7] *See Peppin v. Bodie-Miner*, No. 16-cv-1320 (ADM/JSM), 2016 WL 7368194, at *8 (D. Minn. Nov. 29, 2016), *R&R adopted*, 2016 WL 7366082 (D. Minn. Dec. 19, 2016) ("Here, however, plaintiff did not allege that he was blind without his eyeglasses, nor did he claim to have suffered any physical symptoms resulting from a lack of corrective treatment. Thus, plaintiff has not met the objective component of an Eighth Amendment claim.") (footnote omitted).

Even if Jones had alleged facts that would meet the objective prong, he has failed to allege any facts showing that Raden knew that he had a serious medical need for eyeglasses. It is not clear from Jones' June 13, 2018 letter than he was without eyeglasses at that time, and Jones did not identify any physical consequences (*e.g.*, blindness or physical degeneration of his eyes) in the letter. (*See* Dkt. No. 5 at 6.) Indeed, while Withall stated that "Mr. Jones expressed concern that his mental health and medical needs are not being met at the Wright County Jail," neither Jones nor Withall

---

[7]    Jones alleged "Eyesight going bad from the strain" (Dkt. No. 1 at 5), but did not allege any facts supporting this assertion that would render it facially plausible. *See Iqbal*, 550 U.S. at 555.

requested treatment for Jones in the June 2018 letters sent to Raden or expressed any sense of urgency with respect to those needs. (Dkt. No. 5 at 4, 6.) Rather, the purpose of the letters was to support Jones' request to be transferred to a state correctional facility to facilitate his reentry upon release. (*Id.* at 4 ("Please consider these factors and the enclosed letter from Mr. Jones in support of his request to be transferred to an appropriate state correctional facility, rather than a contract bed at a county jail."); *id.* at 6 ("All these things are unacceptable for me going home in less than 6 months. I need to prepare for my transition back into society, and I can[']t do it here. Do whatever it takes to get me back into the DOC because it[']s VITAL.").) Jones also has not alleged that Raden intentionally delayed or denied Jones access to eyeglasses. Rather, he alleges negligence on the part of Raden. (*See* Dkt. No. 1 at 6 ("[T]he DOC and Wright County Jail were negl[i]gent in properly caring for me."); Dkt. No. 5 at 16 ("All three defendants were negligent . . .").) Consequently, Jones has not alleged facts sufficient to satisfy the subjective prong of an Eighth Amendment claim. *See Dulany*, 132 F.3d at 1239 ("Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.").

The Court recommends dismissal of Jones' claims against Raden based on the alleged denial of medical and dental care, psychological services, and chemical dependency treatment for similar reasons. As discussed above, the June 2018 letters sent to Raden do not suggest that the enumerated "problems" relate to serious medical needs or that treatment was sought—rather, Jones was concerned about his reentry upon release and sought a transfer back to DOC custody. Further, Jones has not alleged any facts

supporting his allegation of harm as a result of the alleged denials of corrective dental work, chemical dependency treatment, or psychological treatment. (*See* Dkt. No. 1 at 5.) Jones also has not alleged that Raden knew that the failure to address these "problems" created an excessive risk to Jones' health or that Raden intentionally delayed or denied Jones access to medical treatment.[8] *See Dulany*, 132 F.3d at 1239. As discussed above, Jones claims only negligence. Accordingly, dismissal is appropriate.

Jones' deliberate indifference claims against Roy in his individual capacity are based solely on Roy's position as the Commissioner of the DOC. (Dkt. No. 5 at 16 ("Tom Roy is responsible for not addressing the concern over me being denied [health care] at the facility that I'm being housed . . . .").) "A supervisor cannot be held liable, on a theory of respondeat superior, for an employee's unconstitutional actions . . . a supervisor incurs liability for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (footnote and citations omitted). Here, Jones has not alleged any personal involvement on the part of Roy. Jones also has not alleged any facts suggesting that Roy knew of Jones' medical, dental, psychological, and chemical dependency treatment needs, much less that Roy did not take corrective action with respect to subordinates' indifference to any such needs. In any event, "corrective inaction" only constitutes

---

[8]    In fact, the grievance relating to Jones' broken hand suggests that Wright County promptly ordered a second brace for Jones (Dkt. No. 5 at 9), and Jones has not alleged otherwise or any harm resulting from any alleged failure to treat his broken hand.

deliberate indifference in "an extreme case," which this is not.  *See id.* n.1.  Accordingly, the Court recommends dismissal of Jones' deliberate indifference claims against Roy.

### 4.    Jones Has Failed to State a "Conditions of Confinement" Eighth Amendment Claim

Jones alleged that he was "denied the process of receiving the proper reentry transition that's afforded by the [Department of Corrections ("DOC")]," and was not given "government identification in order to be a productive citizen."  (Dkt. No. 1 at 5; *see also* Dkt. No. 5 at 16 ("Also, when being denied proper identification then it[']s an issue of conditions of confinement where I am not release[d] with the proper credentials to survive out in society.").)  For the reasons stated below, the Court concludes that this allegation does not state a plausible constitutional violation and should be dismissed.

The Eighth Amendment—applied to the states through the Fourteenth Amendment—imposes a constitutional limitation on punishments such that they cannot be "cruel and unusual."  U.S. Const. amend. VIII; *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981).  In a prison setting, "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment," but "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes*, 452 U.S. at 347.  "[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.'"  *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

To establish that conditions of confinement violate the Eighth Amendment, the plaintiff "must show that (1) the alleged deprivation is sufficiently serious that it denies 'the minimal civilized measure of life's necessities,' and (2) the prison officials were deliberately indifferent to 'an excessive risk to inmate health or safety.'" *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995) (quoting *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995)); *see also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011). An Eighth Amendment claim is evaluated by applying a subjective component and an objective component. "Thus, courts considering a prisoner's claim must ask both if the officials acted with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (cleaned up).

Here, the denial of reentry resources in the form of government identification is not "sufficiently serious that it denies the minimal civilized measure of life's necessities." *Seltzer-Bey*, 66 F.3d at 964 (citation omitted). Although Jones alleged that it would be helpful (even necessary) to have resources such as his birth certificate or other government identification upon release, depriving him of those documents does not constitute cruel and unusual punishment while at Wright County Jail. Jones also has not alleged any facts regarding the State Defendants' state of mind with respect to the denial of those documents, much less facts from which the Court can plausibly conclude the State Defendants acted with a sufficiently culpable state of mind with respect to those documents (or that they even knew he had requested them). Again, Jones' claims sound in negligence. (Dkt. No. 5 at 16 (alleging Roy is responsible for "the neglect in giving

me proper Identification" and "All three defendants were negligent . . . when being denied proper identification").)  Accordingly, the Court recommends Jones' reentry resources claim be dismissed.

### 5.    Jones Cannot Base a Section 1983 Claim on Violations of State Law

Jones' Complaint and Amended Complaint rely on certain Minnesota statutes to support his claims.  (*E.g.*, Dkt. No. 1 at 6 (Complaint referencing several Minnesota statutes); Dkt. No. 5 at 11 (grievance attached to Amended Complaint referencing "DOC statutes").)  To the extent Jones' § 1983 claims are based on alleged violations of Minnesota state law, the Court recommends their dismissal because "[v]iolations of state law do not state a claim under 42 U.S.C. § 1983."  *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000).

### B.    The Court Recommends Dismissal Without Prejudice of the Wright County Sheriff

The Wright County Sheriff, formerly Hagerty and currently Deringer, has not been served in this case.  (*See* Dkt. No. 16.)  Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.  This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

The Eighth Circuit has approved of *sua sponte* dismissal for failure to serve a defendant, so long as the dismissal is without prejudice.  *See Hoffmann v. United States*, 21 F. App'x

528, 529 (8th Cir. 2001) (per curiam) (unpublished opinion) (holding that failure to serve

under Rule 4(m) warranted a sua sponte dismissal without prejudice).

Here, although the failure to serve is because Hagerty was no longer Sheriff of

Wright County when the U.S. Marshals attempted to serve him (Dkt. No. 16 at 1), Jones

did not receive notice of the unsuccessful service because he did not update his address

after he was released from custody.  This failure to apprise the Court of his new address

constitutes a failure to prosecute his claims, also warranting dismissal without prejudice.

*Sterling v. United States*, 985 F.2d 411, 412 (8th Cir. 1993) ("District courts have

inherent power to dismiss sua sponte a case for failure to prosecute, and we review the

exercise of this power for abuse of discretion."); *see also Askew v. Wiley*, 12 F.3d 1102

(Table) (unpublished) (8th Cir. 1993) (affirming dismissal without prejudice for failure to

prosecute when plaintiff did not notify the court of a change in address).  "The authority

of a court to dismiss sua sponte for lack of prosecution has generally been considered an

'inherent power,' governed not by rule or statute but by the control necessarily vested in

courts to manage their own affairs so as to achieve the orderly and expeditious

disposition of cases."  *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962).

Accordingly, the Court recommends dismissal of Hagerty and of the Wright County

Sheriff due to lack of service.

**C.    The Court Recommends Dismissal Without Prejudice of the State Law Claim**

After dismissal of Jones' § 1983 claims, the only remaining claim is Jones'

negligence claim.  (Dkt. No. 1 at 6.)  The Court can decline to exercise supplemental

jurisdiction over state law claims if the federal claims have been dismissed.[9]  "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon U. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Missouri Roundtable for Life v. Carnahan*, 676 F.3d 665, 678 (8th Cir. 2012).  The Eighth Circuit has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible." *Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000) (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990)).  And "'[w]here, as here, resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction.'" *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (quoting *Farris v. Exotic Rubber and Plastics of Minn., Inc.,* 165 F. Supp. 2d 916, 919 (D. Minn. 2001)).  Consequently, the Court recommends the negligence claim be dismissed without prejudice.

---

[9]    In addition, a court can *sua sponte* decline to exercise supplemental jurisdiction. *See Johnson v. City of Shorewood, Minnesota*, 360 F.3d 810, 819 (8th Cir. 2004); *Nieskens v. Peter*, No. 09-cv-2085 (DSD/SRN), 2010 WL 1626902, at *3 (D. Minn. Apr. 21, 2010).

## IV.    <u>RECOMMENDATION</u>

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1.  Defendants Daniel Raden, Tom Roy, and Paul Schnell's Motion to Dismiss (Dkt. No. 18) be **GRANTED**.

2.  Defendants Joe Hagerty and Sean Deringer, the former and current Wright County Sheriff, be **DISMISSED WITHOUT PREJUDICE**.

3.  Plaintiff Michael K. Jones' remaining state law claim be **DISMISSED WITHOUT PREJUDICE**.

DATED: July 24, 2019                          *s/Elizabeth Cowan Wright*
                                              ELIZABETH COWAN WRIGHT
                                              United States Magistrate Judge


## <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).